### UNITED STATES of America

v.

### Kenneth D. HENDRIX, Appellant.

### No. 78–1493.

United States Court of Appeals, District of Columbia Circuit.

Submitted without Oral Argument Nov. 13, 1978.

Decided March 19, 1979.

---

Matthew W. Black, Jr., Washington, D. C. (appointed by the Court) was on the brief, for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George, Stephen R. Spivack and E. Anne McKinsey, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before TAMM, ROBINSON and Mac-KINNON, Circuit Judges.

PER CURIAM Opinion.

PER CURIAM:

After a bench trial, appellant Hendrix was convicted of possession of a sawed-off shotgun in violation of the National Firearms Act, 26 U.S.C. § 5861(d) (1977).[1] Sentence was suspended and appellant was placed on probation for three years. Appellant appeals contending that the search in which the shotgun was found was illegal and that the trial court erred in refusing to suppress evidence of the seizure of the shotgun. We affirm the judgment of the District Court.

I

Appellant and his wife had a violent daylong argument. He allegedly beat and threatened his wife and at one stage fired his shotgun out the window. His wife became scared and went downstairs to her sister's apartment. The sister called the police.

The police who arrived at the scene knew appellant from an earlier incident in which he had fired a handgun out the back window of the apartment. They were told by appellant's wife that "[S]he wanted [the police] to get her baby and take the sawed-off shotgun out of her house" (Tr. Feb. 28, 1978, at 5). They talked appellant into

---

1. The statute provides:
   It shall be unlawful for any person—(d) to receive or possess a firearm which is not registered to him . . . .

coming out of the apartment, where he had been staying with the couple's baby.

When appellant came out of his apartment he continued threatening his wife (in front of the police). As a result, he was placed under arrest for disorderly conduct. The keys to the apartment were taken from him, and in accordance with his wife's request, the officers went upstairs and after a brief search found a loaded double barreled sawed-off shotgun. The gun was seized. Four spent shotgun shells were also found in the bedroom.

## II

■ We hold that the search and seizure of the shotgun was constitutional for two reasons. First, appellant's wife consented to the search.[2] The Supreme Court stated in *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), "that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed *common authority* over or other sufficient relationship to the premises or effects sought to be inspected." (Emphasis added.) Since Mrs. Hendrix had "common authority" over the apartment, her consent validated the search.

Appellant argues that *Matlock* is distinguishable because here appellant was present and objected to the search, whereas there the defendant was merely "absent [and] nonconsenting." 415 U.S. at 170, 94 S.Ct. 988. While some state court decisions support appellant's position,[3] we believe that the better view was expressed by the Sixth Circuit in *United States v. Sumlin,* 567 F.2d 684, 687–88 (6th Cir. 1977). *Sumlin* held that defendant's "female companion" had authority to consent to a search despite defendant's explicit refusal to consent. The court stated:

*Matlock* did not depend on the defendant's absence for the defendant there had just been arrested in the front yard of the residence when the third person's consent to search was procured. . . .

Appellant attempts to distinguish *Matlock,* however, by virtue of the additional fact here that he initially refused to consent to the search. We fail to perceive any constitutional significance in this additional fact. The holding of *Matlock* focused on whether or not the "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." 415 U.S. at 171, 94 S.Ct. at 993. The rationale behind this rule is that a joint occupant assumes the risk of his co-occupant exposing their common private areas to such a search. *Id.* at 171 n.7, 94 S.Ct. 988. . . . There is no reasonable expectation of privacy to be protected under such circumstances. We cannot see how the additional fact of Appellant's initial refusal to consent in any way lessened the risk assumed that his co-occupant would consent. This additional fact does not increase a reasonable expectation of privacy.

We hold, therefore, that this cause is governed by *Matlock* despite the slight factual dissimilarity.

567 F.2d at 687–88 (footnotes omitted). Thus, under *Matlock* and *Sumlin,* Mrs. Hendrix's consent was sufficient authorization for the police to conduct the search.

■ Second, we believe that the warrantless search "was justified by the exigency and circumstances . . . . Although a warrantless entry is *prima facie* unreasonable under the Fourth Amendment, a warrant is not required in the case of exigent circumstances, and the court must look to the facts of the particular case to determine whether there was the requisite exigency.

---

**2.** The record indicates that she requested the search and seizure. Tr. 5.

**3.** *See, e. g., Silva v. State,* 344 So.2d 559, 560–61 (Fla.1977) (3–2); *People v. Reynolds,* 55

Cal.App.3d 357, 127 Cal.Rptr. 561 (1976) (dictum); *People v. Mortimer,* 46 App.Div.2d 275, 361 N.Y.S.2d 955, 958 (1974).

*Warden v. Hayden,* 387 U.S. 294, 298, 87 S.Ct. 1642, 18 L.Ed.2d 782 . . . (1967); *Dorman v. United States,* . . . 140 U.S.App.D.C. 313, 435 F.2d 385 (1970, en banc)." *United States v. McKinney,* 155 U.S.App.D.C. 299, 477 F.2d 1184, 1185–86 (1973).

Exigent circumstances have been held to exist where contraband is " 'threatened with imminent removal or destruction.' " *United States v. Canada,* 527 F.2d 1374, 1379 (9th Cir. 1975), *cert. denied,* 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976), quoting *Hernandez v. United States,* 353 F.2d 624, 627 (9th Cir. 1965), *cert. denied,* 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021 (1966). Such threat was obviously present here. In addition an exigent circumstance was created by the threat to human life (appellant's baby and wife) resulting from the existence of the contraband sawed-off shotgun on the premises and available for use by Hendrix. Because of the early hour, it would have taken at least a few hours to obtain a warrant, during which period appellant, who had been arrested merely for disorderly conduct, likely would have been able to secure his release, return home, and conceal or use the shotgun again.

■ We find the warrantless search to have been reasonable not only on this account but also because of the following circumstances: (1) Mrs. Hendrix appeared hysterical and was obviously worried about what her husband might do; (2) appellant had already fired a weapon that night; (3) the police were informed at the scene that he possessed a sawed-off shotgun which under federal law is a contraband article; and (4) the arresting officers were aware of Hendrix's past criminal conduct with firearms.[4] Under such circumstances, it was reasonable for the arresting officers to respond to Mrs. Hendrix's request to search for and confiscate the sawed-off shotgun without waiting to obtain a warrant.

In summary, since appellant's wife consented to (in fact, requested) the search, and since it was justified by exigent circumstances, the judgment of conviction is

*Affirmed.*

---

**4.** *Cf. United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2083, 29 L.Ed.2d 723 (1971) (plurality opinion of Burger, C. J.) ("[A] policeman's knowledge of a suspect's reputation . . [may be] a 'practical consideration of every day life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip.") It therefore follows that a policeman may also rely upon such information in evaluating the danger posed to others in a given situation.