UNITED STATES of America

v.

Ervin ALLISON, Appellant.

No. 79–2479.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 17, 1980.

Decided Oct. 3, 1980.

John E. Ormond, Jr., Washington, D. C. (appointed by this Court), for appellant.

Robert F. O'Neill, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and John R. Fisher, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before TAMM and MacKINNON, Circuit Judges and PRATT *, United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

As appellant Ervin Allison states, the only issue in this appeal from his conviction for unlawful possession of a controlled substance in violation of 21 U.S.C. § 841(a) is the validity of the ruling denying his motion to suppress a large quantity of heroin, some narcotics paraphernalia, money and a loaded revolver which had been seized in a warrantless search of a motel room. The room was jointly occupied by appellant and a confederate who were selling narcotics. The motion was denied on the ground that the search was justified by exigent circumstances and on additional ground that his confederate, Smith, had consented to the search. Since we find that there was probable cause to search and that the search without a warrant was justified by the exigent circumstances we affirm the conviction and need not reach the consent issues.

I

When John Smith was arrested selling heroin at about 8:00 p. m. on July 28, 1979, on the street in the 1300 block of T Street Northwest in Washington, D.C., he told the police that he was staying at a motel on New York Avenue with a fellow named

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

"Ervin", who later proved to be Allison. He also told them that Ervin "had a lot of dope", "a gun" and some money in Room 226 at the motel. Smith subsequently identified the motel to the police as the "Travelodge" and added:

Well, in the room over there where we are staying it is, if you get over there in a hurry, you will find a large quantity of narcotics and some money and a gun, he said, "but you've got to get over there fast" because Mr. Ervin was there when he [Smith] was arrested and he would be going back to the motel, so if you don't get over there right away you will probably miss it, he will get all of the drugs out of the motel and probably leave town.[1]

(II. Tr. 28).

Upon receiving this information the police immediately called an Assistant United States Attorney and informed him of the factual situation. He advised them to search the room immediately without a warrant because of Smith's warning that speed was essential. The necessity for speed was increased by the knowledge that "Ervin" knew Smith had been arrested. In fact, Smith told the police that they had stopped Ervin for questioning when they arrested Smith, but that they had released Ervin.

The police promptly proceeded to the Travelodge, showed their credentials to the night clerk and verified Smith's statement that "Ervin" was registered in Room 226. They went to Room 226 and, observing that the room lights were on, looked through the window. Because the shades were partially drawn they could only see a part of the room and that two beds had been slept in. Their limited view of the room left open the possibility that Ervin or someone else might be in the bathroom. They knocked on the door but received no response. They then obtained the pass key, opened the door, announced "Police Officers" and entered the room. No person was inside.

On entering Room 226 they observed in plain view on two counters a large quantity of glassine bags containing "white powder" (heroin) and some narcotics paraphernalia. On a bench near the drugs they found a loaded ".38 caliber revolver". The heroin was subsequently valued at $11,000. After observing the contents of the room the officers again called the Assistant United States Attorney and informed him of the evidence that they had observed. He advised them to seize all the evidence.

At approximately 4:55 a. m. the night clerk called one of the officers and told him that "Ervin" had returned to the motel. The officer then returned to the motel and arrested Allison ("Ervin") as he entered Room 226.

II

On the foregoing facts the trial court ruled that the search was valid because of exigent circumstances. We agree.

It is well settled that a search warrant is not required where exigent circumstances are present and that the finding of exigent circumstances depends upon evaluation of a number of factors. *Warden v. Hayden,* 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967); *United States v. Hendrix,* 595 F.2d 883 (D.C.Cir.1979); *United States v. McKinney,* 477 F.2d 1184, 1185–86 (D.C.Cir. 1973). Our late Judge Leventhal characterized the necessary requirement for a warrantless search as an "urgent need." *Dorman v. United States,* 435 F.2d 385, 391, 392 (D.C.Cir.1970) (*en banc*) Mr. Justice Stewart stated the doctrine as follows:

[W]arrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. *McDonald v. United States,* 335 U.S. 451, 456 [69 S.Ct. 191, 193, 93 L.Ed. 153]; *Johnson v. United States,* 333 U.S. 10, 14–15 [68 S.Ct. 367, 369, 92 L.Ed. 436]. *See, e. g., Chimel v. California, supra* [395 U.S. 752, 89 S.Ct.

---

1. When arrested, Smith was on parole from a narcotics conviction and wanted favorable consideration for giving the information. No promises were made to him.

2034, 23 L.Ed.2d 685] (search of arrested suspect and area within his control for weapons or evidence); *Warden v. Hayden*, 387 U.S. 294, 298–300 [87 S.Ct. 1642, 1645–1646, 18 L.Ed.2d 782] ("hot pursuit" of fleeing suspect); *Schmerber v. California*, 384 U.S. 757, 770–771 [86 S.Ct. 1826, 1835–1836, 16 L.Ed.2d 908] (imminent destruction of evidence); see also *supra*, at 392–393.

*Mincey v. Arizona*, 437 U.S. 385, 393–94, 98 S.Ct. 2408, 2413–2414, 57 L.Ed.2d 290 (1978). *Torres v. Puerto Rico*, 442 U.S. 465, 471, 99 S.Ct. 2425, 2428, 61 L.Ed.2d 1 (1979) is to the same effect.

In view of Smith's warning the police were placed on notice of an immediate threat that "Ervin" would remove or destroy the narcotics. We held in *Hendrix, supra*, that: "Exigent circumstances ... exist where contraband is ... threatened with imminent removal or destruction." 595 F.2d at 886. Another consideration is that a serious offense was involved, *Dorman v. United States, supra*, 435 F.2d at 392. The presence of the gun made the situation more pressing and the emergency more critical because it constituted a possible "threat to human life", *United States v. Hendrix, supra*, 595 F.2d at 886 (threat to human life from a sawed-off shotgun); *cf. United States v. Johnson*, 561 F.2d 832, 834 n. 14 (D.C.Cir.) *(en banc), cert. denied*, 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1080 (1977); *United States v. Robinson*, 533 F.2d 578, 583 (*en banc*), *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976).

The night time hours and the difficulty of obtaining a search warrant at that time are also factors that add to the reasonableness of the decision to proceed without a search warrant under the circumstances which existed. *See United States v. Hendrix, supra*, 595 F.2d at 886; *United States v. Johnson, supra*, 561 F.2d at 843–844. In such circumstances some suggest that the police should stake out the premises for however long it might take to obtain a warrant. But such police activity in this case would have risked loss of the evidence and could have endangered the policemen's safety.

After the police had determined that Smith had given them reasonably trustworthy information by their verification that "Ervin" was occupying Room 226 in the Travelodge and that both beds had been slept in, they could reasonably believe that there was an urgent need to search the room promptly. According to their information "Ervin" had been at the scene of Smith's arrest, had had a gun in the room, and might return at any moment. Also, Ervin might be inside Room 226 in the bathroom or otherwise situated where he could have escaped observation from between the parted drapes. The police could not afford to wait. If Ervin or some other person was in the bathroom he might destroy the evidence before they gained admission to the room. And if Ervin returned while they had the room staked out the police could not know for certain the nature or extent of his criminal violations, if any, and thus could not predict his reaction to their appearance. A gun fight might have developed. The police acted reasonably to reduce this possibility by peaceably entering the room to further check the accuracy of Smith's information. It is also significant that the police had twice called an Assistant United States Attorney who, apprised of the circumstances, counseled immediate action.

A final factor supporting a finding of exigent circumstances is the strength of the showing of probable cause. See *United States v. Robinson, supra*, 533 F.2d at 583 (relevance of "clear showing of probable cause"). Having verified Smith's statement as to "Ervin's" occupancy of Room 226, in the Travelodge, and realizing that Ervin had been at the scene when Smith was arrested, the police obviously had probable cause to search. The most reasonable action for the police to take was immediately to follow the advice given by the Assistant United States Attorney and proceed peaceably as they did.

On the Motion to Suppress the trial court found:

Having heard the evidence pertinent to the motion to suppress, the Court con-

cludes that there was adequate probable cause ... based on the testimony of Smith ... that he was staying in Room 226 with [appellant] and that there was a large quantity of narcotics and a pistol which at any moment [might] be removed ... The exigent circumstances which existed in this case [justify the seizure] (Memorandum at 4; App. 20.)

We concur in the trial court's finding of exigent circumstances and affirm on the conviction.

*Judgment accordingly.*