STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOHN JOSEPH MANZI, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 4, 1984—Decided July 2, 1984.

342

Before Judges MATTHEWS, J.H. COLEMAN and GAUL-KIN.

*Dante J. Romanini* argued the cause for appellant (*Kozlov, Seaton & Romanini,* attorneys).

*Keith M. Endo,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Keith M. Endo* and *Robert M. Schaaf,* Deputy Attorneys General, on the brief).

The opinion of the court was delivered by

MATTHEWS, P.J.A.D.

Defendant and a codefendant were charged in an Ocean County indictment with unlawful possession of methamphetamine and phenyl-2-propanone, contrary to *N.J.S.A.* 24:21–20a(1) (Count One); the unlawful manufacture of methamphetamine, contrary to *N.J.S.A.* 24:21–19a(1) (Count Two), and unlawful possession of methamphetamine and phenyl-2-propanone with intent to distribute, contrary to *N.J.S.A.* 24:21–19a(1) (Count Three).

Defendant moved to suppress certain evidence and that motion was denied. Thereafter, defendant entered a guilty plea to Count Two of the indictment under a plea arrangement in which the State agreed to dismiss Counts One and Three. Defendant reserved his right to appeal under *R.* 3:5–7(d). He was sentenced to a five year term of imprisonment, a $5,000 fine, and assessed a penalty of $25 payable to the Violent Crime Compensation Board.

At approximately 1:20 a.m. on September 13, 1981, Detective Sergeant Haines and Lieutenant Lennon of the Little Egg Harbor Township Police Department responded to a report of a burglary and theft in progress at 321 Mathis Drive in Little Egg Harbor. Upon arriving at the scene, a neighbor informed Detective Haines that he had observed two people leave the back door of the house and run into the woods. Detective Haines inspected the premises by flashlight and observed that the glass in the kitchen door was broken. He also observed what appeared to him to be a chemical laboratory. Although he did not have any first-hand experience in the seizure of "speed labs," he indicated that the facilities in defendant's kitchen resembled photographs of such labs used in his drug enforcement training.

Both officers observed a container of acid, vials, plastic and rubber tubing and an unidentifiable odor in the kitchen. Although the house appeared to be unoccupied, the lights were on, as was a radio.

The municipal court judge was provided with the foregoing information by telephone at 1:50 a.m. that same night. He then issued a telephone warrant after ascertaining that the applicant's conclusions were based on his experience which included his observations and training.

The information upon which the municipal court judge relied was presented at the suppression hearing in the form of a transcript of the telephone conversation between Officer Haines and the municipal court judge. Although Officer Haines refers to himself as "the affiant," there is no indication in the verbatim transcript that he was ever sworn. The State conceded that fact at oral argument.

Pursuant to the search warrant, police entered 321 Mathis Drive shortly after 2 a.m. While there, they confiscated various pieces of laboratory equipment and chemicals. It was also ascertained that the premises were owned by defendant and another individual. In furtherance of the investigation, and based upon the evidence seized in the house, additional warrants were obtained on the same evening for defendant's place of business, his automobile and bank accounts on subsequent days.

Later that same morning defendant was arrested as he entered Great Bay Pharmacy in Little Egg Harbor Township. Defendant is a registered pharmacist.

At the conclusion of the suppression hearing, the Law Division judge found adequate probable cause for the issuance of the warrant. He reserved decision as to the significance of the late filing of the inventory and warrant with the county clerk.

Thereafter, the judge issued a letter opinion finding probable cause for issuance of the warrant based on the telephone request, finding defendants incurred no prejudice by the late filing of the warrant, affidavit, and inventory, and denying defendants' motion to suppress the evidence. That opinion was supplemented by another letter opinion in which the judge found that the apparent forced entry of an unoccupied house

coupled with the lateness of the hour and the attendant discovery of the chemical laboratory constituted exigent circumstances to justify the issuance of the telephone warrant.

I

Defendant contends that the facts set forth before the municipal court judge, as recorded verbatim, fail to demonstrate probable cause to enter his premises, search and seize a chemical laboratory allegedly used to manufacture illicit narcotics. We disagree.

Defendant argues that since the police officer did not have any first-hand experience in identifying a "speed lab," his conclusion that this is what rested on defendant's kitchen counter was "a mere suspicion." Under that reasoning, it would be extremely difficult for an officer with no personal experience in the seizure of a specific item, working alone, to present sufficient probable cause to a judicial officer.

*State v. Kasabucki,* 52 *N.J.* 110, 116 (1968), describes probable cause as a flexible, nontechnical concept that includes a conscious balancing of the governmental need to enforce the criminal law against a citizen's constitutional right to privacy. An effort should be made to accommodate the competing interests to serve both in a practical fashion without unduly hampering one or unreasonably impairing the other. 52 *N.J.* at 116.

Detective Sergeant Haines, who was apparently known to the municipal court judge, was a six-year veteran of the Little Egg Harbor police force, with a Bachelor of Science degree from Rider College. In the course of his work with the police, Haines received 40 hours of training in drug identification and advanced narcotics enforcement. His training included descriptions of a typical methamphetamine lab and photographs of actual labs seized.

Haines had had occasion to make approximately 75 arrests dealing with possession and distribution of CDS, and had been

involved in the execution of search warrants and approximately 40 arrests relating to the same.

The municipal court judge, who recorded the entire conversation on tape, asked the officer, reasonably, how the officer knew that it wasn't just "a regular old science kit?" Haines responded by elaborating on his description of what he had seen. A reasonable interpretation of his response would be that he believed what he had seen was much more complex and incongruous to a kitchen counter than a "regular old science kit."

In evaluating the information provided by a police officer, a judge's approach must be a practical and realistic one. The material submitted to demonstrate probable cause may not be described with the technical niceties a lawyer would use, but the judge should take into account the specialized experience and everyday knowledge of policemen. *Kasabucki,* 52 *N.J.* at 117. The facts should be tested by the practical considerations of everyday life on which reasonably prudent and experienced police officers act. *Brinegar v. United States,* 338 *U.S.* 160, 175, 69 *S.Ct.* 1302, 1310, 93 *L.Ed.* 1879, 1890 (1949).

On these facts, after an independent determination, the municipal court judge agreed with Detective Haines and issued a warrant by telephone. Although that warrant later proved to be invalid (see II *infra*), that fact does not, in our judgment, automatically invalidate the seizure. *State v. Guerra,* 93 *N.J.* 146, 152–153 (1983). In reviewing the circumstances surrounding the issuance of an invalid warrant by telephone, although deference may not be given to the issuing judge's determination of probable cause, it is appropriate that it be given evidential weight. *State v. Valencia,* 93 *N.J.* 126, 138 (1983). Further, on his independent examination of the affidavit and transcript of the telephone conversation, the Law Division judge was satisfied that the municipal judge had probable cause to issue the warrant, and deference should be given to his determination. *State v. Kasabucki,* 52 *N.J.* at 117.

## II

The New Jersey Supreme Court has recently passed on the technical and substantive requirements for issuing a valid telephonic search warrant. *State v. Valencia*, 93 *N.J.* 126 (1983). When contacting a judge, the officer must suitably identify himself and specify his request. He must disclose the basis for the information he will present to the judge, and be sworn. The judge should make a contemporaneous recording or adequate notes of the application, and a contemporaneous notation of his findings as to probable cause and exigent circumstances. He should memorialize the specific terms of the search, promptly issue a written confirmatory warrant, and file the warrant and all documentation of the application with the clerk of the court. *State v. Valencia*, 93 *N.J.* at 138–139.

The standard of review for a search pursuant to a telephone authorization is substantially the same as that for a warrantless search. The State has the burden of proving probable cause and exigent circumstances, and that all procedural safeguards have been met. 93 *N.J.* at 136, 139. That done, the search will be considered the functional equivalent of one authorized by written warrant, in which case the determination by the issuing judge of exigent circumstances and probable cause shall be accorded substantial deference. 93 *N.J.* at 139.

In this case, we have the transcript of the contemporaneous tape recording. Detective Haines, who was on a first-name basis with the magistrate, identified himself and stated that the purpose of his call was to get a telephone search warrant. He described his experience and training in drug enforcement, and related his findings upon investigation of the crime scene. In all these respects, the requirements for a valid telephone application have been met.

The State, however, concedes that there is nothing in the record or the transcript to indicate that Detective Haines was under oath. Without an affirmative showing of this on the State's part, the warrant must fail. 93 *N.J.* at 140–141; *State*

v. *Liberti*, 161 *N.J.Super.* 575 (App.Div.1978), certif. den. 79 *N.J.* 502 (1979); *R.* 3:5-3.

### III

In the absence of a valid warrant, the State must justify its entry into defendant's home as a "warrantless" search and seizure. It bears the burden of proving that the officers had probable cause, and that exigent circumstances excused its failure to obtain a valid warrant. *State v. Valencia*, 93 *N.J.* at 136. The defendant argues that no exigency sufficient to permit a warrantless search of the premises existed. Absent exigent circumstances, a warrantless search or seizure in the home, even supported by probable cause, cannot stand. *Payton v. New York*, 445 *U.S.* 573, 100 *S.Ct.* 1371, 63 *L.Ed.*2d 639 (1980); *State v. O'Herron*, 153 *N.J.Super.* 570 (1977), *cert.* den. 439 *U.S.* 1032, 99 *S.Ct.* 637, 58 *L.Ed.*2d 695 (1978).

The *Valencia* Court set out some scenarios under which exigent circumstances may arise.

> The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant ...; (2) reasonable belief that the contraband is about to be removed ...; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought ...; (4) information indicating the possessors of the contraband are aware that the police are on their trail ...; and (5) the ready destructability of the contraband and the knowledge "that efforts to dispose of [the contraband] and to escape are characteristic behavior of persons engaged in [this type of crime]" *United States v. Manning*, 448 *F.*2d 992, 999 (2d Cir.1971); *United States v. Davis*, 461 *F.*2d [1026], at 1031–1032 [3 Cir.1972].
> [93 *N.J.* at 137 (quoting *United States v. Rubin*, 474 *F.*2d 262, 268–269 (3 Cir.1973), *cert.* den. 414 *U.S.* 833, 94 *S.Ct.* 173, 38 *L.Ed.*2d 68 (1973)]

A court should evaluate the circumstances as they would have appeared to prudent, cautious and trained officers. *United States v. Cuaron*, 700 *F.*2d 582, 586 (10 Cir.1983).

Time constraints affecting the choice by the applying police officer between a telephone application and a written warrant application upon a personal appearance are relevant in the

judicial assessment of exigency. *State v. Valencia*, 93 *N.J.* at 137 citing, *e.g.*, *United States v. Cuaron, supra; United States v. McEachin*, 670 *F.*2d 1139 (D.C.Cir.1981).

In *Cuaron*, drug enforcement officers had set up a "buy" from a cocaine distributor operating out of a residence. The go-between was arrested before he was to return to make a second purchase. The officers estimated that they had about an hour before the go-between would be overdue and the suspects might begin destroying the evidence. One officer was in the process of securing a state court warrant, but he would not return for two to three hours. The Tenth Circuit found that under these circumstances, even though the agents did not attempt to secure a federal warrant by telephone, their warrantless entry was justified. *Cuaron*, 700 *F.*2d at 590.

It is interesting to note that, apart from the agents' experience in drug enforcement, there were no objective criteria to indicate that the cocaine might be destroyed. Upon the agents' entry into the house, this is precisely what Cuaron was found in the process of doing. Detective Haines and Lieutenant Lennon were equally fearful that the lateness of the hour, the circumstances of the forced entry of the house and the apparently illegal nature of the equipment all pointed to the probability that the contraband would be removed before they could return with a written warrant.

A warrantless search of defendant's apartment for a shotgun used in a robbery was upheld in *United States v. McEachin*, 670 *F.*2d 1139 (D.C.Cir.1981). The investigating officer was gathering leads from several unidentified sources when he received a "tip" that defendant might dispose of the shotgun. The court ruled that an immediate search of the apartment would have been justified, and that a one to two hour delay, even if it was time enough to obtain a warrant, did not negate its finding of exigent circumstances. *United States v. McEachin*, 670 *F.*2d at 1144, 1145. Likewise, in the instant case, the officers' decision to attempt to procure a warrant through the expedited medium of the telephone should weigh in favor of the

good faith of the officers, rather than against the expediency of the circumstances.

The *McEachin* court regarded as controlling two D.C. Circuit Court rulings: *United States v. McKinney*, 477 *F.*2d 1184 (D.C.Cir.1973) (*per curiam*) and *United States v. Allison*, 639 *F.*2d 792 (D.C.Cir.1980). In *McKinney*, the police conducted a warrantless search of defendant's hotel room after the hotel management inadvertently discovered a sawed-off shotgun in the defendant's room. The court upheld the search even though the room was unoccupied at the time. In *Allison*, defendant's roommate was arrested for selling heroin. He informed the police that there were drugs and a gun in the room, and that defendant was likely to dispose of them because he had learned of the roommate's arrest. The police search of the room was upheld, even though this room, too, was unoccupied at the time. The court stated that the police could not be certain that the room was empty before searching it, and that staking out the premises to obtain a warrant would have endangered the police and risked losing evidence. *United States v. Allison*, 639 *F.*2d at 794.

Here, the police officers had been called to a home at 1:20 a.m. by a report of a burglary. A witness had seen two individuals run from the house into the woods. Lights were on in the house, and a radio was playing. Although they received no answer to their calls, this was certainly not conclusive proof that the house was unoccupied, or that the police were in no danger. They decided to leave an officer on guard only so long as it took them to procure a warrant by telephone, apparently 30 minutes at most.

The Law Division judge, in his supplemental letter of July 13, 1982, found additional exigent circumstances in the danger to the public. He describes Little Egg Harbor Township as a fair sized, semi-rural community with widely scattered housing developments and a small police force. He concluded that "to have placed a police officer on the premises from 1:20 a.m. until such hour in the morning as a magistrate could be reached for

the execution of a written warrant, would have placed an unwarranted strain upon police availability in the rest of the community during nighttime and early morning hours."

Danger to the public is routinely taken into account when determining exigent circumstances, although most often that danger is manifested as a weapon that the police would seize. *State v. Vittellone*, 187 *N.J.Super.* 76, 79 (App.Div. 1982). From a policy standpoint, reduced police coverage in an area is a reasonable factor to consider when determining the exigency of a situation.

Once exigent circumstances sufficient to warrant an application for a telephone warrant were apparent, the police officers certainly were not required to contact the Ocean County Prosecutor, State Police or federal DEA, as the defendant suggests, in order to secure the premises, or to assist them in their determination of probable cause. *United States v. McEachin*, 670 *F.*2d at 1145, 1146.

*State v. Vittellone*, 187 *N.J.Super.* 76 (App.Div.1982), is another example of exigent circumstances. Two officers responded to a report that defendant had been threatening people with a gun. They arrived at the house without prior notice of a drug offense and no opportunity in advance to apply for a search warrant. Defendant admitted the officers and was given his *Miranda* warnings. One of the officers unlocked the drawer where defendant had indicated the gun was kept and therein found a gun, a plastic bag of what appeared to be marijuana and a locked canvas bank deposit bag. When asked what was in the bag, defendant indicated paraphernalia used to smoke marijuana, and pointed out the key. The officer unlocked the bag and found small quantities of CDS.

The Appellate Division upheld the search without a warrant on the basis of exigent circumstances. The officers were lawfully on the premises and legally opened the drawer to determine whether the gun was there. 187 *N.J.Super.* at 79. From there, the marijuana in the drawer was in plain view. The defendant's admission that the bag contained contraband

was the determining factor, indeed the functional equivalent of a judicial determination of probable cause, in the search. 187 *N.J.Super.* at 80. The presence in the house of defendant's family threatened the security of the canvas bag and its contents during the time when a search warrant could have been sought. 187 *N.J.Super.* at 81. Under all these circumstances, the search and seizure were found reasonable. *Id.*

Here, Detective Haines and Lieutenant Lennon were lawfully on the premises in response to a report of a burglary and theft in progress. The chemical paraphernalia was in plain view on the kitchen counter. The officers, the judge who issued the telephone warrant, and later the Law Division judge all agreed that probable cause to search existed. The late hour and circumstances of the burglary produced the risk that the evidence would be destroyed or removed if no guard were posted, pending the application for a· written warrant. If a guard were posted, the physical security of the township could be seriously hampered by the reduction in the available police force. All these circumstances combined, in our view, to justify the officers' entry on to defendant's premises without a warrant.

Affirmed.