Raymond J. DONOVAN, Secretary of Labor, U.S. Department of Labor, Petitioner,

v.

A.A. BEIRO CONSTRUCTION COMPANY, INC., Respondent.

A.A. BEIRO CONSTRUCTION COMPANY, INC., Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION.

Nos. 83–2008, 83–2053.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1984.

Decided Oct. 26, 1984.

Andrea C. Casson, Atty., Dept. of Labor, Washington, D.C., with whom Robert D. McGillicuddy, Atty., Dept. of Labor, Washington, D.C., was on the brief for Raymond J. Donovan, Secretary of Labor, U.S. Dept. of Labor, petitioner in No. 83–2008 and cross-respondent in No. 83–2053. Dennis K. Kade and Kenneth A. Hellman, Attys., Dept. of Labor, Washington, D.C., also entered appearances for Raymond J. Donovan, Secretary of Labor, U.S. Dept. of Labor.

Arthur I. Leaderman, Vienna, Va., with whom Gerald I. Katz, Vienna, Va., was on the brief for A.A. Beiro Const. Co., Inc., respondent in No. 83–2008 and cross-petitioner in No. 83–2053.

Before WRIGHT and WALD, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

A.A. Beiro Construction Company, Inc. ("Beiro") was one of a number of prime contractors engaged in the construction of the District of Columbia Convention Center. Beiro was cited for both serious and nonserious violations of section 5(a)(2) of the Occupational Safety and Health Act, 29 U.S.C. §§ 651–78 ("the Act") following an Occupational Safety and Health Administration ("OSHA") inspection of the construction site.[1] Beiro contested all of the citations, alleging that OSHA lacked proper authority to conduct a warrantless inspection and that Beiro was a victim of vindictive and selective prosecution. Following an evidentiary hearing, the administrative law judge ("ALJ") found that OSHA had obtained proper consent for the inspection and had not vindictively prosecuted Beiro, but vacated three serious and three nonserious citations on substantive grounds. Both the Secretary of Labor ("Secretary") and Beiro timely petitioned the Occupational Safety and Health Review Commission ("the Commission") for discretionary review. The ALJ decision became a final order when no Commissioner directed review. 29 U.S.C. § 661(i). The case is be-

---

1. The Act defines a serious violation as one where "there is a substantial probability that death or serious physical harm could result ... unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(j). Violations not posing such a risk are defined as nonserious. 29 U.S.C. § 666(c).

fore this court on cross-petitions of Beiro and the Secretary pursuant to section 11(a) of the Act, 29 U.S.C. § 660(a). Beiro claims the ALJ erred in finding that the inspection did not violate the fourth amendment or OSHA regulations and that Beiro was not vindictively and selectively prosecuted. The Secretary claims the ALJ erred in vacating serious citation item 8 and nonserious citation item 2. We affirm the decision of the ALJ on all counts.

## I. BACKGROUND

Contrary to standard practice, there was no one prime contractor for the District of Columbia Convention Center construction project. Instead the D.C. Government entered into contracts with a number of "prime contractors," with one, the Fuller-Griffin Company, also being retained as the construction superintendent for the project. Hence, the Fuller-Griffin Company along with Mr. Gordon, the Project Manager for the D.C. Government, represented the District at the worksite.

The Convention Center construction site came up on OSHA's "general inspection" list in early 1981. The inspection was assigned to Mr. Tupper, an OSHA compliance officer. Before Mr. Tupper got around to making the general inspection, OSHA received a complaint about safety conditions at the site from an employee of one of the construction companies at the site, Midwest Steel Erectors. Mr. Tupper was then assigned to service the employee complaint as well as conduct the general inspection.

On March 2, 1981, Mr. Tupper arrived at the construction site to carry out his assigned tasks. He was directed to the office of Mr. Pope, Project Manager for the Fuller-Griffin Company. Mr. Tupper showed his credentials, advised Mr. Pope of the nature of his inspection, and asked Mr. Pope to assemble the representatives of all the contractors at the site. All of the representatives arrived and agreed to cooperate with the inspection, including Midwest Steel Erectors. All except Beiro.

Beiro was one of the prime contractors at the site engaged in erecting basic con-

crete structures. Beiro's General Superintendent, Mr. Martin, was the last to arrive at the meeting. He asked Mr. Tupper to wait until Beiro's Safety Director, Mr. Braswell, arrived. When Mr. Braswell arrived, he informed Mr. Tupper that he was not going to allow any part of Beiro's work area to be inspected without a warrant. Mr. Tupper responded that his first concern was to investigate the Midwest Steel employee complaint. Mr. Braswell, however, continued to object because Mr. Tupper would be able to view Beiro's work in progress once he was on the site. Mr. Martin and Mr. Braswell then positioned themselves in the doorway so as to physically block Mr. Tupper from exiting the office to perform his inspection. Mr. Tupper called his supervisor, Mr. Holmes, who advised Mr. Tupper to consider Beiro's actions a denial of entry and to leave the worksite.

The following day, March 3, 1981, Mr. Holmes informed Mr. Tupper that all the legal problems had been resolved and that the D.C. Government, owner of the worksite, had consented to the inspection. Mr. Tupper returned to the worksite with two other compliance officers. Mr. Gordon met them at the site and confirmed that the D.C. Government would fully cooperate with the inspection. The OSHA team then proceeded to conduct its inspection beginning with Beiro. Mr. Braswell and Beiro's legal counsel, Mr. Rubenstein, accompanied the compliance officers during the inspection of Beiro.

As a result of this inspection, Beiro was issued serious and nonserious citations, carrying a total proposed penalty of $6900. Beiro contested the citations claiming that OSHA had conducted an illegal inspection. Specifically, Beiro argued that the inspection violated Beiro's fourth amendment rights, the Act, and OSHA regulations. In addition, Beiro claimed to be a victim of vindictive and selective prosecution. The ALJ found that the OSHA inspection was conducted pursuant to valid consent obtained from the D.C. Government and that Beiro's other claims lacked merit. The

ALJ decision also vacated a number of the citations on substantive grounds.

On this appeal Beiro continues to argue that OSHA conducted an illegal inspection and that it was a victim of vindictive and selective prosecution. The Secretary argues that the ALJ erred in vacating two of the citations.

## II. THE OSHA INSPECTION

The Act authorizes two types of inspections: an inspection pursuant to a general administrative plan, 29 U.S.C. § 657(a); and an inspection pursuant to an employee complaint, 29 U.S.C. § 657(f). Neither section of the Act mentions the need for a search warrant or other process.[2] The Supreme Court, however, held in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), that an administrative search warrant is required for nonconsensual OSHA inspections. The Court, nonetheless, noted that "the great majority of businessmen can be expected in normal course to consent to inspection without warrant . . . ." *Id.* at 316, 98 S.Ct. at 1822. Since OSHA conducted a warrantless inspection of Beiro, the questions to be addressed by the court are whether OSHA had obtained valid consent to inspect and, if so, whether the inspection exceeded the scope of that consent. The ALJ concluded

that "the reliable and creditable evidence" of the record established that "the OSHA inspection of the D.C. Convention Center worksite, and Beiro's construction activities thereon, on March 3 and 4, 1981, was made pursuant to consent properly sought and obtained from appropriate and authorized representatives of the D.C. Government, the owner of the worksite." *See* ALJ Decision at 43.

### A. *Consent to Inspection*

 Consent effective to validate a warrantless search may be given by a person other than the victim of the search. *See Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *United States v. Harrison*, 679 F.2d 942 (D.C.Cir.1982). The Supreme Court in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), confirmed that proof of voluntary consent is not limited to proof that consent was given by the victim but may be established by showing that "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.* at 171, 94 S.Ct. at 993. Common authority, however, is not to be implied from a third party's mere property interest,[3] "but rests rather on mutual use

---

**2.** Beiro argues that OSHA regulation 29 C.F.R. § 1903.4 requires compulsory process if entry is denied. *See* Reply Brief for Beiro at 5. Section 1903.4 states, in pertinent part:

(a) Upon a refusal to permit the Compliance Safety and Health Officer, in exercise of his official duties, to enter without delay and at reasonable times any place of employment or any place therein, to inspect . . ., the Safety and Health Officer shall terminate the inspection . . . . The Compliance Safety and Health Officer shall endeavor to ascertain the reason for such refusal, and shall immediately report the refusal and the reason therefor to the Area Director. The Area Director shall consult with the Regional Solicitor, who shall take appropriate action, *including compulsory process, if necessary.*

(emphasis added). As the ALJ found, *see* ALJ Decision at 26–27, the clear language of the regulation merely gives the Regional Solicitor the choice to proceed by compulsory process if deemed necessary. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 317–18, 98 S.Ct. 1816, 1823,

56 L.Ed.2d 305 (1978) ("The regulation [29 C.F.R. § 1903.4] represents a choice to proceed by process where entry is refused . . . ."). Compulsory process did not become necessary in the present case because consent for the inspection was obtained from the District. *See* ALJ Decision at 26; *infra* at 900. Beiro further argues that § 1903.4(b) required OSHA to seek compulsory process in advance of the attempted inspection because Beiro's past practices had put OSHA on notice that Beiro would not permit a warrantless inspection. The ALJ, however, found that OSHA was not aware of Beiro's presence at the site until the compliance officer, Mr. Tupper, arrived at the site on March 2 to conduct the inspection. *See* ALJ Decision at 27. This is a factual finding supported by substantial evidence in the record. Neither § 1903.4(a) nor § 1903.4(b) required OSHA to obtain a warrant in this case.

**3.** Beiro cites *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), for the proposition that a person's status as property

of the property by persons generally having access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171 n. 7, 98 S.Ct. at 1820 n. 7. The touchstone of *Matlock's* third party consent analysis is that any reasonable expectation of privacy in common areas is lost once joint occupants assume the risk that a co-occupant will allow access to the common areas.[4] *See United States v. Hendrix*, 595 F.2d 883, 885 (D.C.Cir.1979); *United States v. Block*, 590 F.2d 535, 539 n. 5 (4th Cir.1978); *United States v. Sumlin*, 567 F.2d 684, 687–88 (6th Cir.1977), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). Thus in applying these third party consent principles to the facts of the present case, our inquiry focuses upon determining Beiro's reasonable expectations of privacy. *Cf. United States v. Lyons*, 706 F.2d 321 (D.C. Cir.1983) (analysis begins by determining Lyons' legitimate expectations of privacy). We are required to uphold the ALJ's factual findings if supported by substantial evidence. *See Whirlpool Corp. v. OSHRC*, 645 F.2d 1096, 1101 (D.C.Cir.1981) (court required to accept Commission's finding of fact if it is supported by "such relevant evidence as a reasonable mind might accept to support a conclusion"); 29 U.S.C. § 660(a) (Commission's findings of fact conclusive if supported by substantial evidence on the record).

The site in question was a large, multiemployer construction site covering a four square block area owned by the District of Columbia. The District entered contracts with a number of prime contractors to work on the project, one of which was Beiro. The Fuller-Griffin Company, one of the prime contractors, was retained as the construction superintendent for the project. In this capacity, Fuller-Griffin was to coordinate and keep on schedule the various other prime contractors. In addition, Mr. Gordon, the Project Manager for the D.C. Government, represented the District at the site.

The perimeter of the site was enclosed by a chain link fence but no interior fences separated the various worksites. Each of the contractors tended to occupy a discrete area; however, there was considerable overlap, with workers from the various companies simultaneously working throughout the site.

On March 2, 1981, Mr. Tupper, an OSHA compliance officer, advised Mr. Pope, the Project Manager for Fuller-Griffin, of

owner or agent of the property owner does not establish the person's authority to consent to a search of the occupant. *See* Brief for Beiro at 56. In *Stoner,* the Court held invalid a search of a hotel guest's room where consent and access had been obtained from the night clerk. Similarly, a landlord generally cannot consent to the search of leased premises. *See Chapman v. United States,* 365 U.S. 610, 616–18, 81 S.Ct. 776, 779–80, 5 L.Ed.2d 828 (1961); *United States v. Impink,* 728 F.2d 1228, 1232 (9th Cir.1984). *Matlock,* however, clearly distinguishes between "mere property ownership" which is not alone sufficient to establish authority to consent and joint access and control of property which is sufficient to establish authority to consent. *Matlock,* 415 U.S. at 171 n. 7, 98 S.Ct. at 1820 n. 7. The D.C. Government was not only the owner of the property but also retained joint access and control of the property.

4. Beiro's argument that the *Matlock* principles are inapplicable in the present case because Beiro was a present, objecting party, whereas in *Matlock* the party was merely absent and non-

consenting, lacks merit. This court squarely rejected that argument in *United States v. Hendrix,* 595 F.2d 883, 885 (D.C.Cir.1979). The court followed the view of the Sixth Circuit, expressed in *United States v. Sumlin,* 567 F.2d 684 (6th Cir.1977):

We cannot see how the additional fact of Appellant's initial refusal to consent in any way lessened the risk assumed that his co-occupant would consent. This additional fact does not increase a reasonable expectation of privacy.

*Hendrix,* 595 F.2d at 885 (quoting *Sumlin,* 567 F.2d at 687–88). *Accord United States v. Bethea,* 598 F.2d 331, 335 (4th Cir.), *cert. denied,* 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979) (*Matlock* looked not to presence or absence of party but to whether party assumed the risk that another might consent to the search); *United States v. Canada,* 527 F.2d 1374, 1379 (9th Cir. 1975) (same), *cert. denied,* 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976).

OSHA's intended inspection. Mr. Pope arranged a meeting between Mr. Tupper and all of the site contractors. All of the contractors agreed to cooperate with the inspection except Beiro. Beiro's General Superintendent for the worksite, Mr. Martin, and its Safety Director, Mr. Braswell, objected to the inspection without a warrant and physically blocked Mr. Tupper from leaving to inspect the other contractors' worksites. Mr. Tupper considered this a denial of entry and left. Subsequently, OSHA sought and obtained consent for the inspection from Mr. Gordon, Project Manager for the D.C. Government at the construction site. Mr. Tupper and two other compliance officers returned to the site the following day and began conducting the inspection.

■ Although not challenging the D.C. Government's general authority to give consent to the inspection, Beiro does challenge Mr. Gordon's authority to give consent on behalf of the D.C. Government. Beiro argues that Article 15 of its contract defines its rights of privacy in relation to the D.C. Government. *See* Brief for Beiro at 53. Article 15 of the contract gives Beiro the right to refuse entry "to any person whose admission is not specifically authorized in writing by the contracting officer." The contracting officer for the District was a Mr. Harvey, not Mr. Gordon. The contract, however, defines "contracting officer" as including that official's "authorized representative." *See* Brief for the Secretary at 24 n. 29. It is undisputed that Mr. Gordon was the contracting officer's representative at the construction site.[5] *See* Reply Brief for Beiro at 19; Appendix, Vol. II at 43. Beiro, nonetheless, argues

that Mr. Gordon acknowledged his lack of authority to consent when he attempted to consult the contracting officer and when unable to reach him consulted the D.C. Corporation Counsel. *See* Reply Brief for Beiro at 19. The validity of Mr. Gordon's consent as a matter of fourth amendment jurisprudence is governed by the third party consent principles of *Matlock* and not by the literal provisions of Beiro's contract.[6] The contract provisions are relevant only to the extent they bear upon Beiro's legitimate expectations of privacy.

■ On the basis of the facts presented, both the other contractors at the site and the District had access to and mutual use of the common areas of the construction site. Beiro cannot claim a reasonable expectation of privacy against these parties. Beiro assumed the risk that one of them might permit the common area to be inspected and in fact all cooperated with the inspection. Beiro's arguments regarding the legitimacy of the method by which the District consented are unpersuasive. It is undisputed that the District had the authority to consent and that it did in fact consent. Whether Mr. Gordon was properly authorized to give consent is a question of fact. The ALJ found that consent was obtained from "appropriate and authorized representatives of the D.C. Government." *See* ALJ Decision at 43. Beiro has presented no basis for us to overturn this finding. OSHA obtained proper, effective third party consent to inspect the common areas of the construction site.

The Secretary further contends that Beiro, itself, impliedly consented to the inspection by failing to renew its objection on March 3 when the OSHA compliance offi-

---

5. Beiro does, however, argue that the clause of the contract, defining the "contracting officer" as including that official's authorized representative, was not offered into evidence at the hearing and thus is not part of the record before us. To interpret the meaning of Article 15 of the contract, this court must necessarily look to the definitions of the terms used in that article. We reject any assertion that this is improper.

6. It may be noted that Beiro apparently objects primarily to what it terms the "trickle down"

method of obtaining consent here, *see* Brief for Beiro at 52, and not to the fact that the consent was not in writing. The Secretary suggests that Beiro waived any right afforded by the contract when it failed to request Mr. Gordon to put the authorization in writing when all parties were present and the inspection was initiated on March 3, 1981. *See* Brief for Secretary at 24 n. 29. In any case, the literal provisions of Article 15 of the contract are not ultimately controlling as to the issue of valid consent.

cers returned to the site, after receiving the District's consent to inspect. Brief for Secretary at 20. Beiro asserts that it continued to object to the validity of the inspection but was presented with a *"fait accompli"*—three compliance officers claiming to have proper authority to conduct an inspection—thus, Beiro acquiesced.[7] Reply Brief for Beiro at 10. The ALJ found that Beiro cooperated with the compliance officers and at no time refused access to any part of the site.[8] ALJ Decision at 29. The ALJ suggests that Beiro most probably waived any expectation of privacy it may have had in its change shed and tool trailer by failing to object to entry.[9]

■ Beiro's acquiescence under the circumstances of this case, regardless of its exact nature, was not alone sufficient to constitute consent. To preserve its fourth amendment rights, Beiro is not required, after initially objecting to and physically preventing the inspection, to continue to resist when subsequently confronted by OSHA officials claiming valid authority to proceed with the inspection. The government must show by a preponderance of the evidence that consent to search was freely and voluntarily given. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Whether consent is freely and voluntarily given is a question of fact to be determined from the totality of circumstances. *Id.* at 227, 93 S.Ct. at 2047. "[I]f under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats or force, or granted *only in submission to a claim of lawful authority* —then we have found the consent invalid

and the search unreasonable." *Id.* at 233, 93 S.Ct. at 2050 (emphasis added) (citing *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Amos v. United States,* 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921)). *See also United States v. Vasquez,* 638 F.2d 507, 524 (2d Cir.1980) ("[I]f the individual has merely acquiesced in a show of authority, he should not be found to have consented."), *cert. denied,* 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981); *United States v. Sanchez,* 635 F.2d 47 (2d Cir.1980) (same).

■ The Supreme Court has cautioned that to approve consent searches "without the most careful scrutiny would sanction the possibility of official coercion." *Schneckloth,* 412 U.S. at 229, 93 S.Ct. at 2048. Upon careful scrutiny of the circumstances of the present case, we are unable to find that Beiro freely and voluntarily consented. The OSHA compliance officers claimed authority to inspect on the basis of consent received from the D.C. Government. Beiro merely acquiesced to their apparent lawful authority to conduct the inspection, believing it had no other choice. We also note some credence in Beiro's assertion that the Secretary has engaged in a whipsaw strategy: resistance or noncooperativeness during an inspection results in severer penalties but nonresistance or cooperativeness implies consent. *See* Reply Brief for Beiro at 12–14.

### B. *Scope of Inspection*

■ There are limits on searches or inspections authorized by third party consent. While authority to consent to search

---

**7.** Beiro also argues that Mr. Tupper misrepresented Beiro's rights on March 2, 1981, when he "asserted that only the owner of the property had a right to block an OSHA inspection and demand a warrant." Brief for Beiro at 49. The ALJ rejected this argument "as not supported by the creditable evidence or the law." ALJ Decision at 23. Inasmuch as the D.C. Government did have the right to consent the inspection, and Beiro did in fact continue to demand a warrant and physically prevent the inspection on March 2, we find no basis for overturning the ALJ's

conclusion that Beiro was not misled regarding the nature of its fourth amendment rights.

**8.** This finding is somewhat hard to reconcile with the ALJ's later finding that Mr. Braswell's conduct impeded the inspection. *See* ALJ Decision at 34.

**9.** The change shed and tool trailer are the only two areas where the ALJ found that Beiro may have retained a reasonable expectation of privacy. ALJ Decision at 29.

of a common area extends to most objects in plain view, it does not automatically extend to the interiors of every enclosed space within the area. *United States v. Block*, 590 F.2d 535 (4th Cir.1978). *Accord United States v. Harrison*, 679 F.2d 942 (D.C.Cir.1982); *United States v. Buettner-Janusch*, 646 F.2d 759 (2d Cir.), *cert. denied*, 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981). *Cf. Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (no reasonable basis for finding that third party had authority to consent to search of area in question); *United States v. Lyons*, 706 F.2d 321 (D.C.Cir.1983) (warrantless search, incident to arrest, of coat hanging in hotel closet unconstitutional). In *Block*, the court found that a mother had authority to consent to an inspection of her son's room in her home but that her authority did not extend to the interior of the son's footlocker. The court reasoned that suitcases, strong boxes, valises, etc. are often imbued with the highest privacy expectations. *Block*, 590 F.2d at 541. On the other hand, this court in *Harrison* upheld a wife's consent to search of the basement of the home she shared with her husband along with closed, but unsealed, boxes which the husband had stored in the basement. *Harrison*, 679 F.2d at 947.

In *Block*, the court stated:

The rule has to be one of reason that assesses the critical circumstances indicating the presence or absence of a discrete expectation of privacy with respect to the particular object: whether it is secured, whether it is commonly used for preserving privacy, etc.

*Block*, 590 F.2d at 541 n. 8. Applying this rule to the facts of the present case, it must be determined whether Beiro retained a reasonable expectation of privacy in any of the specific areas inspected.

The ALJ found that Beiro may have had a reasonable expectation of privacy in the "change shed" and "tool trailer" but that all other areas involved in the citations were open, construction areas in which Beiro had no reasonable expectation of privacy. ALJ Decision at 29. We need not reach the constitutional question with respect to the violations relating to the change shed or tool trailer. The ALJ vacated these citations on substantive grounds. The Secretary has not challenged the ALJ's findings with respect to the change shed violation and we affirm the ALJ's findings with respect to the tool trailer violation. *See infra* at 904–905.

Little reflection is required to conclude that the ALJ was correct in his finding that the majority of the remaining citations clearly involved open construction areas devoid of any reasonable expectations of privacy. In general terms, these citations were for lack of proper safety equipment on a tower crane (serious citation item 2); rusty and broken rigging equipment (serious citation item 4), and lack of proper safety equipment on raised floors or platforms (serious citation items 7, 9a, & 9b). *Cf. Marshall v. Western Waterproofing Co.*, 560 F.2d 947 (8th Cir.1977) (no reasonable expectation of privacy where scaffold exposed to public view). While Beiro contests the Secretary's assertion that these violations were observable from the public street, Beiro concedes that they were openly observable on the construction site.[10] *See* Reply Brief for Beiro at 23–29.

█ The only citations raising the slightest question as to whether they were properly within the scope of the consent are serious citation items 5a, 5b and 5c, and nonserious citation items 7a and 7b. Item 5a involved a portable drill whose cord had

---

**10.** In addition to arguing that the inspection was conducted pursuant to the express consent of the District and implied consent of Beiro, the Secretary argues that under the "open fields" doctrine, *see Oliver v. United States*, —— U.S. ——, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) and *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), Beiro had no reasonable expectation of privacy at the construction site.

The Secretary asserts that the work activities at the construction site were in open view and that the expectation of privacy protected by the fourth amendment does not extend to objects or activities in such "open fields." Brief for Secretary at 29. Having found that the inspection of the common areas of the construction site was authorized by valid third party consent, we decline to reach the merits of this argument.

broken insulation exposing the uninsulated current carrying wire. Item 5b was for failure to conduct daily inspections of electrical cords and equipment. This was observable because inspection dates were indicated by pieces of colored tape affixed to the equipment or its cord. Item 5c involved an extension cord that did not have an effective ground. To establish the grounding violation, OSHA did employ the use of Woodhead and Ecco testers. Nonserious citation items 7a and 7b related to the deteriorated condition of a seat belt found under the operator's seat in the cab of a front-end loader and the lack of a horn in the same vehicle. These were discovered when Mr. Tupper observed the front end loader in operation with the driver bouncing "severely" in his seat. *See* ALJ Decision at 90. Mr. Tupper asked the driver if he wore a seat belt and the driver responded that he never wore a seat belt. The seat belt was then located under the operator's seat. Mr. Tupper then asked the driver to sound the horn and discovered the loader was not equipped with a horn.

All of the equipment, here at issue, was in use in the open construction site. Areas of privacy exempted from third party consent have generally involved enclosed or secured places commonly used for preserving privacy. *See supra* at 901–902. Beiro can hardly claim such an expectation of privacy in equipment being openly used on a large, multi-employer construction site. Furthermore, OSHA's right to inspect must necessarily include some right of closer examination once an observation is made which justifies a reasonable suspicion that a violation exists. Relatedly, plain view cases in the criminal context have recognized that the incriminating nature of an item may not become apparent without closer examination. "The cases indicate that an officer may conduct such an examination if he at least has a 'reasonable

suspicion' to believe that the discovered item is evidence." *United States v. Wright,* 667 F.2d 793, 798 (9th Cir.1982); *see generally* 2 W. LaFave, *Search and Seizure* § 4.11, at 174 (1978). The effectiveness of OSHA inspections would be largely eviscerated if compliance officers are not given some nominal right to follow up on observations of potential violations.[11] We affirm the ALJ's Decision that these citation items were properly within the scope of the consent.

Beiro's claim that the wall-to-wall inspection conducted here was unauthorized because OSHA was acting pursuant to an employee complaint lacks merit. The factual basis of the claim is not supported by the record. OSHA claims and the ALJ found that the inspection was pursuant to both the employee complaint and a general administrative plan. ALJ Decision at 6–10. More importantly, the ALJ found that Mr. Gordon "informed the OSHA team that he knew of the intended scope of the inspection and that the D.C. Government would fully cooperate." ALJ Decision at 16. Thus, Mr. Gordon consented to the full scope of the inspection. Beiro is erroneously equating consensual and warrant searches. Under *Marshall v. Barlow's, supra,* probable cause for an administrative warrant may consist of either a showing that the inspection is pursuant to reasonable administrative standards (section 657(a) inspection) or specific evidence of an existing violation (section 657(f) inspection). There is a split in authority with respect to whether a specific employee complaint supports a wall-to-wall inspection, *see Hern Iron Works, Inc. v. Donovan,* 670 F.2d 838 (9th Cir.), *cert. denied,* 459 U.S. 830, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982), or only a limited inspection bearing an appropriate relationship to the violation alleged, *see Donovan v. Sarasota Concrete Co.,* 693 F.2d 1061 (11th Cir.1982). This conflict is

---

**11.** The Act, 29 U.S.C. § 657(a), provides:

(a) In order to carry out the purposes of this chapter, the Secretary ... is authorized—

....

(2) to inspect and investigate ... any such place of employment and all pertinent condi-

tions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

over the scope of inspections pursuant to administrative warrants, particularly whether a specific employee complaint constitutes sufficient probable cause for a magistrate to issue a warrant for a wall-to-wall inspection. This is not an issue in the case at hand because the District consented to the wall-to-wall inspection.[12]

### III. VACATION OF SERIOUS CITATION ITEM 8 AND NONSERIOUS CITATION ITEM 2

The Secretary claims that the ALJ erred in vacating a serious violation of 29 C.F.R. § 1926.500(d)(2) for failing to provide guardrails on a concrete ramp four feet or more above ground level, and a nonserious violation of 29 C.F.R. § 1926.152(a)(2) for failing to properly store containers of flammable or combustible liquids. The Act gives the ALJ jurisdiction to determine whether violations have occurred and, if so, whether abatement periods or penalties imposed are reasonable. 29 U.S.C. §§ 659(c), 666(i). Our review of the ALJ decision is limited to determining whether his findings are supported by substantial evidence on the record. *Whirlpool Corp.*, 645 F.2d at 1101; 29 U.S.C. § 660(a).

### A. *The Guardrail Citation*

■ One of the compliance officers, Mr. Wiseman, observed workers carrying materials and tools up an elevated ramp with no guardrails. The ALJ vacated the citation on the ground that the precise identity of the workers on the ramp was not established in the record. Hence, the record established neither exposure of Beiro employees nor Beiro's knowledge of the condition. *See* ALJ Decision at 73. The only means of identifying the workers as Beiro employees was the fact that they wore blue safety helmets. Questioning by the ALJ,

however, revealed that other workers at the site besides Beiro employees also wore blue safety helmets. *See* Appendix, Vol. II at 2412–13. Thus, there was no way to positively identify the workers as Beiro employees on the basis of their blue safety helmets. The ALJ did not err in vacating this citation.

### B. *Storage of Gasoline Cans*

■ Beiro was cited for storing a propane cylinder and five, five-gallon gasoline cans in its tool trailer. The trailer had two large doors at one end. The left hand door was closed and the right hand door open. The gas cans and propane cylinder were stored in the corner formed by the closed door and the left side of the trailer. The substantive issue here involves the interpretation of two regulations: 29 C.F.R. § 1926.152(a)(2) prohibits the storage of flammable or combustible liquids "in areas used for exits, stairways, or ... the safe passage of people"; 29 C.F.R. § 1926.-152(b) permits the indoor storage of up to 25 gallons of flammable liquid. The ALJ found that only the right side of the trailer was a passageway and the left side was a storage area, thus, there was no violation because up to 25 gallons of flammable liquid may be stored indoors. ALJ Decision at 86. The Secretary claims that this is too narrow an interpretation of 29 C.F.R. § 1926.152(a)(2) which should be construed as prohibiting the storage of combustible liquids either directly in or *close* to an exit, stairway, or passageway. *See* Brief for Secretary at 54. Obviously, there is a point at which the proximity of the storage of flammable liquids to a passageway becomes close enough to pose a risk to safe passage and thus come within the meaning

---

12. We similarly do not have to decide whether the ALJ was correct in finding that OSHA's handling of the complaint pursuant to an in-house directive was proper. *See* ALJ Decision at 20–23. Beiro claims that section 657(f) of the Act requires that employee complaints be signed by the employee. Since the complaint here failed to comport with this requirement, Beiro argues it is insufficient to support a wall-to-wall inspection. *See* Brief for Beiro at 41–43. The issue of the proper handling of complaints has

arisen in the context of determining what constitutes a sufficient complaint for purposes of obtaining a warrant. *See, e.g., Marshall v. Horn Seed Co., Inc.,* 647 F.2d 96 (10th Cir.1981). This is not an issue in the present case. OSHA obtained valid third party consent to conduct a wall-to-wall inspection of the common areas of the construction site. The validity of this consent is in no way dependent on the sufficiency of the employee complaint.

of § 1926.152(a)(2). The question is whether that point was reached in this case.

This court faced a similar question in *L.R. Willson & Sons, Inc. v. Donovan*, 685 F.2d 664, 674–76 (D.C.Cir.1982). The question in *L.R. Willson* was at what point the use of safety belts became "impractical" within the meaning of 29 C.F.R. § 1926.105(a). The Secretary argued that the inability to use safety belts at *all times* rendered them impractical thus making the use of safety nets mandatory even if safety belts could be used most of the time. *Id.* at 674. The Commission upheld the Secretary and we reversed. The court held that while the Secretary's interpretation was consistent with the principle of construing the Act liberally to protect the safety of workers and may have been what the Secretary intended to mandate, it was not what the regulation said. "It is well settled that 'regulations cannot be construed to mean what an agency intended but did not adequately express.'" *Id.* at 675 (quoting *Kent Nowlin Constr. Co. v. OSHRC*, 593 F.2d 368, 371 (10th Cir.1979)). The Act clearly contemplates regulations expressed in terms of objective criteria so as to give employers proper notice of what is required. *Id.* at 676. The Secretary is always free to promulgate new standards or interpretative rules to clarify existing standards. Reading the regulation to require safety nets only if belts could not be worn for a significant period of time, the court concluded that the Secretary failed to present substantial evidence of a violation. Whereas the Secretary showed belts could not be worn at all times, he failed to show they could not be worn a *significant amount of time.*

In *L.R. Willson,* we essentially followed the Eighth Circuit's analysis in *Brennan v. OSHRC & Ron M. Fiegen, Inc.*, 513 F.2d 713 (8th Cir.1975). *See L.R. Willson,* 685 F.2d at 674–76. *Fiegen,* like the present case, involved a situation where the Secretary and the Commission disagreed over the interpretation of a regulation. The court upheld the Commission's view stating:

While the Secretary may have intended the regulation to mean one thing, it is the Commission and not the Secretary which is charged with final administrative adjudication of the Act ... and where the Commission has given the regulation an interpretation well within the plain meaning of its terms, we cannot say that the Commission's reading is unreasonable.

*Id.* at 715–16 (citation omitted).

Similarly in the present case, we cannot say the ALJ's interpretation of the regulation is unreasonable. After reviewing and evaluating the evidence, the ALJ determined that area where the gas cans were stored was a storage area and not an area used for an exit, a stairway, or passage of people as contemplated by § 1926.152(a)(2). On the facts of this case, we find the ALJ's decision to vacate the citation supported by substantial evidence.

## IV. VINDICTIVE AND SELECTIVE PROSECUTION

Beiro claims that it was a victim of vindictive and selective prosecution. To support these claims, Beiro argues that OSHA "upped the ante," maximizing the penalties against Beiro in response to Beiro's exercise of its constitutional right to demand a warrant, and that OSHA targeted Beiro for enforcement because of its non-union status. *See* Brief for Beiro at 60–63. The decision of the ALJ rejected both arguments. *See* ALJ Decision at 30.

The ALJ rejected Beiro's vindictive prosecution claim because the authorities relied upon by Beiro were inapplicable since they related to criminal, not civil cases, and because the claim was not supported by the evidence. Specifically, the ALJ noted that the penalties set forth in a citation are only "proposed penalties" since under the Act, 29 U.S.C. § 666(i), the Commission has the obligation to assess penalties when contested by the employer. *See, e.g., Long Mfg. Co. v. OSHRC,* 554 F.2d 903 (8th Cir.1977) (penalties when contested are assessed by Commission and not the Secretary); *California Stevedore & Ballast Co. v. OSHRC,* 517 F.2d 986 (9th Cir.1975) (Secretary's pro-

posed penalty only effective if not contested). In this regard, the Tenth Circuit has noted that an "increased penalty can be imposed only by the Commission, not the Secretary, and it is subject to judicial review. Thus the possibility of vindictiveness is negligible." *Clarkson Constr. Co. v. OSHRC*, 531 F.2d 451, 456 (10th Cir.1976). In addition, as the Secretary points out, the proposed penalties assessed against Beiro were not the maximum allowable penalties under the Act.[13] *See* Brief for Secretary at 45. Finally, the ALJ found no appearance of vindictiveness in Mr. Tupper's conduct. To the contrary, he found Mr. Tupper conducted the inspection with a "high degree of professionalism." ALJ Decision at 32. Beiro has no basis for a vindictive prosecution claim. This claim was properly rejected by the ALJ. We find it unnecessary to reach the question of whether a vindictive prosecution claim can ever be brought in a civil OSHA proceeding.

The ALJ made no mention of whether a selective prosecution claim is equally available in both civil and criminal proceedings. Since we affirm the ALJ's rejection of Beiro's selective prosecution claim on substantive grounds, we have no occasion to address this question. Beiro's presence at the site, let alone its non-union status, was not known by OSHA until after the inspection was initiated. *See* ALJ Decision at 32–33. OSHA did inspect the Beiro work areas first, before the specific complaint against Western Steel Erectors. The ALJ, however, found Mr. Tupper's explanation, that he wished to quickly conclude the inspection of Beiro so that the remainder of the inspection could proceed smoothly and expeditiously, creditable. ALJ Decision at 15–16. Finally, Beiro was not the only contractor cited for violations. Midwest Steel Erectors, Fuller-Griffin, and MTI Construction Company also received citations for violations. *See* Complainant's Answers to Interrogatories, No. 6, Appendix Vol. I, Tab. 3, at 6. Beiro has not met the high threshold standards necessary to establish a defense of selective prosecution. *See United States v. Mangieri*, 694 F.2d 1270 (D.C.Cir.1982). Beiro was not singled out from others similarly situated for prosecution. Nor was the decision to prosecute Beiro improperly motivated. The ALJ did not err in rejecting Beiro's selective prosecution claim.

### V. CONCLUSION

In sum, we hold that OSHA obtained proper consent for the inspection of Beiro and did not vindictively or selectively prosecute Beiro. We further hold that the ALJ did not err in vacating serious citation item 8 and nonserious citation item 2. Accordingly, the Commission's order is

*Affirmed.*

---

13. The Act authorizes penalties of up to $1,000 for each serious and nonserious violation. 29 U.S.C. § 666(b), 666(c). Beiro originally received citations for 13 serious violations and 9 nonserious violations with proposed penalties totalling $6900.