P09060065

**UNITED STATES of America**

**v.**

**Francisco Martin DURAN, Defendant.**

**Crim. No. 94–447 (CRR).**

United States District Court, District of Columbia.

March 16, 1995.

Leigh A. Kenny, Federal Public Defender for D.C., Washington, DC, for defendant.

Eric A. Dubelier, Brenda Jene Johnson, U.S. Attorney's Office, Washington, DC, for U.S.

## *ORDER*

CHARLES R. RICHEY, District Judge.

Before the Court are the Defendant Duran's Motion to Suppress Evidence Seized During Warrantless Searches of Workplace, and the Government's Opposition thereto. The Court held an evidentiary hearing on said Motion on March 14, 1995. Upon careful consideration of the pleadings, the oral argument of counsel, the relevant law, and the entire record herein, the Court finds that the Defendant's Motion to Suppress shall be denied.

The Defendant argues that he had a reasonable expectation of privacy in his workplace, the upholstery shop at the Broadmoor Hotel in Colorado Springs, Colorado, and that he did not consent to a search of his workplace or otherwise relinquish his expectation of privacy in his items there. The Defendant asserts that the agents should have sought a warrant before searching his workplace and that, absent proof that the search fell within one of the exceptions to the warrant requirement, all items seized from his workplace must be suppressed.

In Opposition, the Government contends that the Defendant abandoned the property and therefore cannot assert a Fourth Amendment claim. Moreover, the Govern-

550

ment argues that the agents searched only after receiving permission to do so from Broadmoor officials who had the actual authority to consent to the search and that, in any event, the agents reasonably relied on the Broadmoor's apparent authority to consent to the search.

## BACKGROUND

On October 29, 1994, the Defendant was arrested by agents of the United States Secret Service after allegedly firing numerous rounds of ammunition from a Norinco SKS semiautomatic weapon in the vicinity of the White House. Federal authorities, including the Secret Service, the Federal Bureau of Investigation (FBI) and Bureau of Alcohol, Tobacco and Firearms (ATF), immediately began an investigation, and learned that the Defendant was most recently employed as an upholsterer at the Broadmoor Hotel in Colorado Springs, Colorado.

On October 31, 1994, United States Secret Service Agent Robert Hislop travelled to the Broadmoor Hotel where he was introduced to a Mr. Dennis Lesko, the Vice President of Marketing at the hotel, who was designated the "contact person" with respect to the shooting at the White House. Mr. Lesko gave him a business card from Duran Upholstery which read "Death to all government officials" on the back. Agent Hilsop was advised that the hotel had terminated the Defendant's employment due to failure to report to work, which was the hotel's automatic but "unwritten" policy following a failure to report within a 3–day period. It had also changed the locks in case the Defendant, who had a key, should return.

Agent Hislop was further informed that the Defendant's wife had contacted the Defendant's supervisor and the hotel engineer, Mr. Kirk Robinson, on or about Monday, October 3, 1994, in search of her husband, asking whether he had reported for work. She further indicated that the Defendant had left home the Friday before, that she had filed a missing persons report on him, and that she did not anticipate his returning to work. The agent was informed that when Denise Phillips, the administrative assistant to Mr. Robinson, went to the upholstery shop looking for the Defendant, she found a note on Broadmoor stationary on his desk which read "See Ya, Wouldn't Wanna Be Ya!" The hotel considered this a resignation statement and removed the note, placing it in the Defendant's personnel file.

On October 31, 1994, the Defendant's former supervisor, Mr. Kirk Robinson, who retained a key to the upholstery shop, invited Agent Hilsop to examine the Defendant's work space and desk area, and signed a consent form to this effect. Agent Hilsop searched the drafting table, bookshelves and other areas in plain view, and seized several items.

On November 1, 1994, Agent Hilsop returned along with FBI Special Agent Don Kusulas. They were again admitted to the upholstery shop by Mr. Robinson and permitted to look around, whereupon they seized additional items.

## DISCUSSION

**I. THE COURT FINDS THAT THE DEFENDANT ABANDONED THE PROPERTY IN HIS WORKPLACE AND RELINQUISHED ANY REASONABLE EXPECTATION OF PRIVACY IN THE SAME**

"Within the workplace context, th[e Supreme] Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police." *O'Connor v. Ortega*, 480 U.S. 709, 716, 107 S.Ct. 1492, 1497, 94 L.Ed.2d 714 (1987). "The workplace includes those areas and items that are related to work and are generally within the employer's control," and "[t]hese areas remain part of the workplace context even if the employee has placed personal items in them...." *Id.* at 715–16, 107 S.Ct. at 1496–97. However, "employees' expectations of privacy in their offices, desks, and file cabinets ... may be reduced by virtue of actual office practices...." *Id.* at 717, 107 S.Ct. at 1497. Thus, whether an employee has a reasonable expectation of privacy in his or her workplace must be assessed on a case-by-case basis, "in the context of the employment relation. An office is seldom a private enclave free from entry by supervisors, other

employees, and business and personal invitees." *Id.* at 717–18, 107 S.Ct. at 1497.

■ Against this backdrop, the facts of the instant case invoke yet another principle of law. "It is well established that the warrantless search or seizure of 'abandoned' property does not violate the fourth amendment." *United States v. Wider*, 951 F.2d 1283, 1285 (D.C.Cir.1991). "Although the abandonment inquiry focuses on the intent of the person alleged to have abandoned the property, the test for abandonment is an objective one under which 'intent may be inferred from words spoken, acts done, and other objective facts.'" *Id.* (quoting *United States v. Thomas*, 864 F.2d 843, 846 (D.C.Cir.1989) (internal quotation marks omitted)). "There can be nothing unlawful in the Government's appropriation of such abandoned property." *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960).

Here, although the Defendant may have maintained some reasonable expectation of privacy in his office while he worked at the Broadmoor Hotel, a question which, under *O'Connor*, is itself subject to interpretation, the facts reveal that the Defendant abandoned any such expectation when he vacated his office. In late September 1994, the Defendant failed to appear for work as scheduled. When federal authorities initiated the search on October 31, 1994, the Defendant had not been to the hotel in approximately thirty days, and had made no effort to retrieve or arrange for the safekeeping of his belongings.

Moreover, the Broadmoor had terminated the Defendant's employment after he failed to appear for work for three consecutive days, and when the agents searched the workplace nearly a month later, the Defendant was no longer considered an employee of the Broadmoor. Indeed, not only did the Defendant lose any expectation of privacy in abandoning his belongings, he no longer had access to the premises by the time the search was conducted, as the locks had been changed after his disappearance.

In addition, the Defendant's note, which read "See Ya, Wouldn't Wanna Be Ya!" and was prominently displayed on the top of the drafting table and placed in his personnel file by hotel officials, can be read as a sort of resignation letter. The note contained no word of his whereabouts. Nor did it contain directions with respect to the handling of any personal belongings he may have left behind. Under such circumstances, the Defendant assumed the risk that hotel employees would dispose of any such items, and cannot now be seriously heard to argue that his former employer should somehow have secured his belongings—which were strewn about the office in plain view—or shielded them from public inspection in the event the Defendant returned in the near or distant future. *Cf. United States v. Patrick*, 959 F.2d 991, 998 (D.C.Cir.1992) (where defendant remained as a house guest beyond his welcome, he assumed the risk that his friend would go through his personal belongings in evicting him). In sum, the Court finds that the Defendant abandoned any reasonable expectation of privacy he may have had in any personal belongings kept at his former workplace.

### II. EVEN IF THE DEFENDANT RETAINED A REASONABLE EXPECTATION OF PRIVACY IN HIS WORKPLACE, THE SEARCH COMPORTED WITH THE FOURTH AMENDMENT BECAUSE THE GOVERNMENT AGENTS RECEIVED THE CONSENT OF HOTEL OFFICIALS

■ Assuming arguendo that the Defendant retained a reasonable expectation of privacy in any property at the Broadmoor Hotel, the Court further finds that the search was made pursuant to a valid consent, thus satisfying the Fourth Amendment's requirement of reasonableness. *Patrick*, 959 F.2d at 996. "[T]he consent of one who possesses common authority over [or other sufficient relationship to] premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170–71, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Thus, where there has been "mutual use of the joint property by persons generally having joint access or control for most purposes," third-party consent "recognize[s] that any of

the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7.

In the case at bar, the Broadmoor Hotel officials exercised common authority over the upholstery shop, as evidenced by management's retention of a key, and they freely and voluntarily consented to a search of its common areas. Thus, under *Matlock,* the warrantless search of the Defendant's workplace was valid.

Even if the Broadmoor officials did not in fact have common authority over the premises at issue, a warrantless entry based upon third party consent is valid where, at the time of entry, the officers reasonably believed that the third party possessed common authority over premises, even if it becomes later apparent that actual authority to consent did not exist. *Illinois v. Rodriguez,* 497 U.S. 177, 186–88, 110 S.Ct. 2793, 2800–01, 111 L.Ed.2d 148 (1990); *United States v. Whitfield,* 939 F.2d 1071, 1073 (D.C.Cir. 1991). Under the totality of the circumstances extant here, the agents acted reasonably in believing that they had valid consent to search. The Defendant's former supervisor, Mr. Kirk Robinson, had a key to the premises and signed a form consenting to the search. Moreover, the officers knew that the Defendant had been absent from work for approximately a month, and was no longer considered an employee of the hotel.

Finally, none of the materials seized had been shielded from public view in some sort of box or other container but were scattered about the workplace. "Areas of privacy exempted from third party consent have generally involved enclosed or secured places commonly used for preserving privacy." *Donovan v. A.A. Beiro Construction Co.,* 746 F.2d 894, 903 (D.C.Cir.1984). As the Defendant made no attempt to preserve any expectation of privacy he may have had in the premises, the Court finds that the search was valid.

Accordingly, it is, by the Court, this 15 day of March, 1995,

ORDERED that the Defendant Duran's Motion to Suppress Evidence Seized During Warrantless Searches of Workplace shall be, and hereby is, DENIED.